UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

**RUHI REIMER AND NOOSHIN REIMER,**
on behalf of themselves and
all others similarly situated,

       Plaintiffs,

v.                                                   Civil Action No. 3:20-cv-00360

**BANK OF AMERICA, N.A.,**
SERVE:  CT Corporation System
4701 Cox Rd. Suite 285
Glen Allen, VA  23060

       **Defendant.**

## CLASS ACTION COMPLAINT

COME NOW the Plaintiffs, **Ruhi Reimer and Nooshin Reimer**, on behalf of themselves and others similarly situated, alleges the following facts in support of this Class Action Complaint against Bank of America, N.A.

## PRELIMINARY STATEMENT

1.  This is a class action complaint prosecuted for the Defendant's violation of the Federal Equal Credit Opportunity Act (ECOA), 15 U.S.C. §1691 *et seq.*, and the Virginia Equal Credit Opportunity Act (VECOA), Va. Code Ann. § 6.2-500.  The Defendant regularly accepts and processes consumer credit applications, extends credit, services existing credit accounts, participates in credit decisions and takes adverse actions against consumers.

2.  Despite this role, the Defendant does not provide consumers with notices of adverse actions that comply with the ECOA.

3. Specifically, and by example only, when Bank of America unilaterally changes the terms of credit granted to a consumer by canceling the account, which is an adverse action, based on reasons other than the terms of its card agreement allow it do so, it does not supply the ECOA-compliant reason for the cancelation in or change in terms of credit. Defendant's adverse action notice does not disclose the principal, accurate or specific reasons for taking adverse actions as required under the ECOA and VECOA. In addition to supplying a pretextual, false, inadequate, or secondary reason instead of the true or principal reason for taking adverse action, the Defendant's adverse action notices fail to supply other mandatory disclosures required by the ECOA and VECOA.

4. This action is brought for equitable and declaratory relief together with costs and attorneys' fees pursuant to the Equal Credit Opportunity Act (ECOA) 15 U.S.C. §1691 et. seq., and in particular § 1691(d) and its implementing regulations 12 C.F.R. 1002.9 (Regulation B) as well as a claim for actual damages and statutory punitive damages, costs and attorney's fees under the Virginia Equal Credit Opportunity Act (VECOA) Va. Code. Ann. §§ 6.2-500 et seq., in particular § 6.2-503(A) & (B); 6.2-505.

**JURISDICTION**

5. The Court has federal question jurisdiction conferred by 28 U.S.C. § 1331 and 15 U.S.C. §1691e. The Court also has supplemental jurisdiction under 15 U.S.C. § 1367. Venue is proper because Defendant regularly does business in the Commonwealth and maintains a registered agent in Henrico County, Virginia and a principal place of business in Richmond, Virginia.

**PARTIES**

6. Plaintiff, Ruhi Reimer, is a natural person. Plaintiff, at all times relevant hereto was

a "consumer" and "person" protected by the Equal Credit Opportunity Act and the Virginia Equal Credit Opportunity Act. Plaintiff lives in the Commonwealth of Virginia within the geographic boundaries of the Eastern District of Virginia.

7. Plaintiff, Nooshin Reimer, is a natural person. Plaintiff, at all times relevant hereto was a "consumer" and "person" protected by the Equal Credit Opportunity Act and the Virginia Equal Credit Opportunity Act. Plaintiff lives in the Commonwealth of Virginia within the geographic boundaries of the Eastern District of Virginia.

8. Bank of American, N.A.. is a foreign corporation that maintains more than one place of business in the Commonwealth of Virginia, does substantial business in the Commonwealth of Virginia, and maintains branches within the geographic boundaries of the Eastern District of Virginia, Richmond Division.

9. FIA Card Services, N.A., was acquired by and is now operated as Bank of America, N.A. in or about 2015.

10. Defendant is a "creditor" as defined by the ECOA and VECOA.

## FACTS

11. Mr. and Mrs. Reimer each had established Bank of America credit card accounts that were in good standing, up to date, paid on time, and active in May of 2015.

12. Mr. and Mrs. Reimer also had other established Bank of America products such as checking and bank accounts that were in good standing and active in May of 2015.

13. Mr. Reimer had an established business credit card account that was in good standing, up to date, and active in May of 2015.

14. In or about June of 2015, Mr. Reimer received a notice from Bank of America, dated May 27, 2015, informing him that it was closing his credit card account ending in 5848 "in

accordance with your Credit Card Agreement which permits either you or us to terminate the account at any time."

15. In or about June of 2015, Mrs. Reimer received a notice from Bank of America, dated May 28, 2015, informing her Bank of America was closing her credit card account ending in 0817 "in accordance with your Credit Card Agreement which permits either you or us to terminate the account at any time."

16. In or about June of 2015, Mrs. Reimer received a notice from Bank of America, dated May 28, 2015, informing her that Bank of America was closing her credit card account ending in 6380 "in accordance with your Credit Card Agreement which permits either you or us to terminate the account at any time."

17. In or about June of 2015, Mr. Reimer received a notice from Bank of America, dated May 29, 2015, informing him that Bank of America was closing his business credit card account ending in 2-8711 and all other associated accounts according to the Agreement which permits either party to terminate the account at any time.

18. Although the Card Agreement may have provided Bank of America the right to terminate the card agreements, Bank of America was still required by the ECOA and VECOA to provide Mr. and Mrs. Reimer a reason for the termination in writing.

19. Upon information and belief, Bank of America has a process for reviewing consumer accounts and takes adverse action on accounts based on criteria that Bank of America does not share with its credit card customers.

20. Upon information and belief, Bank of America reviewed the Plaintiffs' accounts on a periodic basis.

21. Upon information and belief, Bank of America reviewed all of its customers'

accounts on a periodic basis.

22. Upon information and belief, Bank of America made a decision to close Plaintiffs accounts based on criteria that it used in reviewing the Plaintiffs' accounts.

23. Upon information and belief, Bank of America used criteria that it did not communicate to the Plaintiffs or other consumers to decide which accounts to close.

24. A creditor may provide a consumer with a statement of reasons in the adverse action notice itself, or it may provide the consumer with a disclosure both of his right to receive a written statement of reasons and the identity of the person from whom the written statement of reasons may be obtained. Defendants' adverse action notice did not provide either method of communicating the statement of reasons for taking adverse action against the Plaintiffs.

25. The adverse action notice did not contain the credit score it received regarding the Plaintiffs.

26. Defendant knew or should have known the adverse action notice it sent to the Plaintiffs was not only non-compliant with the VECOA and ECOA, but that it was false.

27. Defendant is a large credit granting agency that extends credit to thousands of consumers each year, and knew or should have known about the requirements of Regulation B. Therefore, there is no justifiable reason or good faith basis for its failure to comply with the minimum adverse action requirements of Regulation B.

28. Bank of America's conduct in sending the adverse action notice to Plaintiffs and the class was not a mistake. Rather, it was exactly as Bank of America intended.

29. The ECOA adverse action notice requirement was enacted as "a strong and necessary adjunct to the anti-discrimination purpose" of the statute and to "fulfill[] a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient

and this information should have a pervasive and valuable educational benefit." S. REP. No. 94-589, at 406, 408, 1976 WL 13838, at *4, *7 (Jan. 21, 1976).

30. Upon signing of the amendment expanding the ECOA into law, President Gerald Ford issued a statement on March 23, 1976, in which he confirmed that in addition to its anti-discrimination purpose, the law "permits the Attorney General, as well as private citizens, to initiate suits where discrimination in credit transactions has occurred. It also provides that a person to whom credit is denied is entitled to know of the reasons for the denial." Presidential Statement on Signing the Equal Credit Opportunity Act Amendments of 1976, available at http://www.presidency.ucsb.edu/ws/?pid=5745 (last visited February 21, 2017). These "twin goals" of the 1976 amendment to the Act have been repeatedly recognized by the courts as the basis for the statutory requirement.

31. Bank of America's failure to provide an ECOA-compliant adverse action notice, which contains the principal reason for denial of credit, deprived Plaintiffs of the right to information mandated by congress to further the anti-discrimination and educational purposes of the statute.

32. Because the accounts were closed when there were balances and activity, the closure by a credit grantor is a negative credit reporting event because it has a negative effect on credit utilization ratio and credit mix. These negative events lowered the Plaintiffs credit scores. https://www.equifax.com/personal/education/credit/report/inactive-credit-card-account-closed/

33. Bank of America's malfeasance caused a cognizable informational injury to the Plaintiffs who are left baffled by the decision to close all of their credit card accounts despite the fact that they were all well-established and in good standing.

34. Plaintiffs were injured because they were deprived of the information they were

entitled to under the ECOA and VECOA, which would provide them knowledge of conduct within their control that caused Bank of America's decision to close the accounts.

35. Plaintiffs were injured because they were deprived of information that would have informed them whether they are the victims of credit discrimination.

36. Plaintiffs were injured because they did not receive the benefit of the favorable credit terms of the accounts, which Plaintiffs used to their financial benefit.

37. Plaintiffs were injured because they suffered damage to their credit standing when the Bank of Amerca closed the accounts.

38. The putative class members suffered the same or similar informational and financial injury that Plaintiffs suffered, which injuries the VECOA and ECOA were designed to protect against.

39. Defendants failed to provide an adequate statement of reasons for its adverse action to Plaintiffs and the class members as required under the ECOA.

40. This action is alleged as a class action pursuant to Fed. R. Civ. P. 23(b)(3) and 15 U.S.C. § 1691e (a) on behalf of the following national class of individuals ("ECOA Class") initially defined as:

> (a.) All natural persons who had a Bank of America credit card account within the five years preceding class certification; (b.) to whom Bank of America did provide a notice; (c.) similar to the notices attached as Exs. 1-3 to the Class Complaint.

> And a class of Virginians ("VECOA Class") pursuant to Fed. R. Civ. P. 23(b)(2) initially defined as:

> (a.) All natural persons residing in the geographic boundaries of the Commonwealth of Virginia; (b.) who had a Bank of America credit card account within the five years preceding class certification; (c.) to whom Bank of America did provide a notice; (c.) similar to the notices attached as Ex. 1-3 to the Class Complaint.

41.     **Numerosity:** Upon information and belief, Plaintiffs allege the class of persons to be represented is so numerous that joinder of all members is impractical. Defendant's website states:

> Bank of America is one of the world's leading financial institutions, serving individual consumers, small and middle-market businesses and large corporations with a full range of banking, investing, asset management and other financial and risk management products and services. The company provides unmatched convenience in the United States, serving approximately 66 million consumer and small business clients with approximately 4,300 retail financial centers, including approximately 3,000 lending centers, 2,700 financial centers with a Consumer Investment Financial Solutions Advisor and approximately 2,100 business centers; approximately 16,900 ATMs; and award-winning digital banking with approximately 39 million active users, including approximately 30 million mobile users. Bank of America is a global leader in wealth management, corporate and investment banking and trading across a broad range of asset classes, serving corporations, governments, institutions and individuals around the world. Bank of America offers industry-leading support to approximately 3 million small business owners through a suite of innovative, easy-to-use online products and services. The company serves clients through operations across the United States, its territories and approximately 35 countries. Bank of America Corporation stock (NYSE: BAC) is listed on the New York Stock Exchange. #1 credit card issuer in the United States based on loans outstanding.
> Found at https://newsroom.bankofamerica.com/companyoverview last visited April 15, 2020.

42.     **Typicality:** The letters mailed to Plaintiffs are obvious form letters. Plaintiffs and each member of the class are entitled to information about the principal reason that an adverse credit decision was made by Bank of America. Plaintiffs' claim is not only typical of the class, but it is likely identical to the claims of each class member for the Defendant's failure to comply with the ECOA because it likely sent identical adverse action letters, none of which stated the specific or truthful reasons for taking adverse action required by the ECOA, VECOA, and/or Regulation B.

43.     **Commonality:** There are questions of law and fact common to the class and Plaintiffs' claims are typical of the claims of all the potential class members. All are based on the

same legal and remedial theories and the same reason stated in the denial letters. All are based on the simple class questions of whether or not Defendant failed to provide a specific and truthful statement of reasons for taking adverse action on loan applications in its adverse action notices and whether such failure violated the ECOA and VECOA.

44. **Adequacy:** Plaintiffs will fairly and adequately protect the interest of the class. Plaintiffs have retained counsel who is experienced in handling class actions and litigation under the Federal Consumer Credit Protection Act. They are committed to the class and have no conflict with it.

45. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of the controversy as to the ECOA and VECOA classes. There are no individual issues that would burden or impede litigation in the aggregate. Class resolution will provide a uniform decision on the legality of the Defendant's standard process. Further, absent class representation, it is certain that most class members will be unaware of their rights or be able to obtain adequate legal representation to prosecute those rights.

46. **Predominance:** Defendant has acted or refused to act on grounds that apply generally to the ECOA class such that uniform relief is appropriate. The class claim and the relief sought in this class action predominate over any potentially individual claim a class member may have.

47. Defendant has made a conscious or reckless decision to disregard the ECOA's and VECOA's requirement to provide a specific statement of reasons for taking adverse action on consumer credit applications despite the plain language of the statute and the regulations promulgated by the Consumer Financial Protection Bureau. It has acted on grounds that apply to the class, so that final injunctive relief and declaratory relief will benefit the entire class.

48. Defendant has more than adequate resources to comply with the VECOA's and ECOA's adverse action requirements. It has violated the ECOA and VECOA in a uniform way affecting thousands of consumers despite its knowledge of the adverse action notice requirements.

49. Despite the clear instructions set forth in the VECOA, the ECOA and Regulation B, Defendants have refused to and failed to comply with the adverse action notice requirements persistently for the entire period of two years preceding the filing of this complaint.

## COUNT I – Equal Credit Opportunity Act
## Class Claim

50. Plaintiffs incorporate the above-alleged actions and omissions of Defendant with respect to the adverse action letter that failed to provide an adequate, truthful, primary or specific statement of reasons for taking adverse action, which violated the ECOA, 15 U.S.C. §1691(d). Defendant's conduct is uniform as to the putative ECOA class.

51. Plaintiffs and the putative ECOA class are entitled to a declaration that Defendant's adverse action notices violate the ECOA.

52. Plaintiffs and the putative class suffered concrete informational injuries which the ECOA was designed to address, caused by Defendant's conduct in purposely supplying a false reason and refusing to disclose the principal reason for the cancelation of credit.

53. Plaintiff and the putative ECOA class are entitled to equitable relief in the form of an injunction requiring Defendant to send ECOA-compliant notices to all members of the putative class, together with the other mandatory disclosures required by the ECOA.

54. Under the ECOA, Plaintiffs and the class are entitled to equitable and declaratory relief necessary to enforce the purpose of the statute, attorneys' fees, and costs to be determined by the Court. 15 U.S.C. § 1691e.

//

## COUNT II – Virginia Equal Credit Opportunity Act
## Class Claim

55.     Plaintiffs incorporate the above-alleged actions and omissions of Defendant with respect to the adverse action letter that failed to provide an adequate, truthful or specific statement of reasons for taking adverse action, which violated the VECOA, Va. Code. Ann. § 6.2-503 & 505.

56.     The reasons Defendant provides in its written notice for taking adverse action were not only an inadequate because they failed to provide the principal reason for the adverse action, but they were was untruthful.  Defendant's failure to comply with the VECOA was not a mistake.

57.     Plaintiffs and the putative class suffered concrete informational injuries which the VECOA was designed to address, caused by Defendant's conduct in purposely providing a false reason and refusing to disclose the principal reason for the cancelation of credit.

58.     Plaintiff and the putative VECOA class are entitled to statutory punitive damages of up to $10,000.00 per violation, plus attorneys' fees and costs pursuant to VECOA. Va. Code Ann. 6.2-505(B).

59.     Plaintiffs demand judgment for themselves and on behalf of the initially-defined putative VECOA class against the Defendant for damages, including statutory punitive damages, attorneys' fees and costs, and such other specific or general relief the Court finds just and appropriate.

60.     The Virginia Equal Credit Opportunity Act, Va. Code Ann. § 6.2-503, mirrors the federal statute.  Statement of reasons for adverse action.

> A. Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for the action on the application from the creditor. A creditor shall satisfy this obligation by:
>
>    1.     Providing statement of reasons in writing as a matter of course to applicants against whom adverse action is taken; or

    2.    Giving written notification of adverse action that discloses (i) the applicant's right to a statement of reasons within 30 days after receipt by the creditor of a request made within 60 days after such notification and (ii) the identity of the person or office from which such statement may be obtained. The statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

B. A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.

C. Where a creditor has been requested by a third party to make a specific extension of credit directly or indirectly to an applicant, the notification and statement of reasons required by this section may be made directly by such creditor, or indirectly through the third party, provided in either case that the identity of the creditor is disclosed.

D. The requirements of subsections A, B, and C may be satisfied by oral statements or notifications in the case of any creditor who did not act on more than 150 applications during the calendar year preceding the calendar year in which the adverse action is taken, as determined under regulations of the Commission.

61.    Under the VECOA, Plaintiffs and the class are entitled to actual and punitive damages, attorneys fees, and costs to be determined by the Court. Va. Code Ann. § 6.2-505.

62.    WHEREFORE Plaintiffs demand judgment for equitable and declaratory relief against Defendants pursuant to the ECOA; actual and statutory punitive damages against Defendants pursuant the VECOA; attorneys' fees and costs authorized by both the ECOA and VECOA; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED**.

        **Ruhi Reimer and Nooshin Reimer, on behalf of themselves and all similarly situated individuals,**

By: _____/s/_____
        Of Counsel

Susan M. Rotkis, VSB #40693
Price Law Group, APC
382 S. Convent Ave.

Tucson, AZ 85701
Tel: (818) 600-5506
Fax: (818) 600-5405
E-mail: susan@pricelawgroup.com

*Counsel for Plaintiffs*