**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

RUHI REIMER and
NOOSHIN REIMER, for themselves and
on behalf of others similarly situated, *et al.,*

      Plaintiffs,

v.                                  Civil Action No. 3:20-cv-00360-REP

BANK OF AMERICA ,N.A.,

      Defendant.

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs, Ruhi Reimer and Nooshin Reimer (collectively "Plaintiffs"), for themselves and the Settlement Class Members, by Counsel, have moved for preliminary approval of a class settlement, for conditional certification of a class for purposes of settlement, for appointment of class counsel, for direction of notice to the class, and to schedule a final fairness hearing. This memorandum is in support of Plaintiffs' request for preliminary approval pursuant to Fed. R. Civ. P. 23 for the class settlement involving claims and causes of action against Bank of America, N.A. ("Defendant").  A hearing on the motion is scheduled for January 7, 2020, at 11:30 a.m.

### I.  INTRODUCTION

This Settlement will provide a cash fund of at least $250,900, or $1300 per Class Member for each of the 193 Virginians who are members of the Settlement Class. The Settlement resolves Plaintiffs' Equal Credit Opportunity Act claim against Bank of America alleging it violated the Class Members' rights to lawful adverse action notices when Bank of America terminated their credit accounts. After sufficient discovery, complete briefing on a motion to dismiss, a thorough exploration of the Parties' claims and defenses, and arms-length negotiations facilitated by United

States Magistrate Judge Douglas Miller, the Parties entered into a Class Action Settlement Agreement and Release (the "Settlement Agreement"), a copy of which is attached to the Motion for Preliminary Approval.[1] The Settlement Agreement proposes the settlement of the single class action claim pleaded against the Defendant. At the time that this case was settled, Defendant's Motion to Dismiss was pending and had not yet been decided. The unknown outcome presented an especially serious risk that the Defendant might prevail on its legal defense that Plaintiffs were not entitled to any adverse action notice for the termination of an existing account. This Settlement is an excellent result that will bring meaningful monetary relief to Class Members while mitigating the risk of loss on the motion to dismiss.

Under the terms of the Settlement, each Class Member is entitled to receive an automatic distribution of not less than $1300. The settlement amount to the class will not be reduced by the costs of the settlement administration, the reimbursement of litigation expenses, and the payment of attorneys' fees and service awards to class representatives, which will all be paid separately by the Defendant and not out of the Settlement Fund.

Pursuant to Federal Rule of Civil Procedure 23, with the consent of the Defendant, the Plaintiffs have moved for preliminary approval of the proposed class action settlement and submit this memorandum in support. Specifically, the Parties request that the court preliminarily and conditionally certify the proposed Settlement Class and preliminarily approve the proposed class settlement by entering the proposed Order of Preliminary Approval of Class Action Settlement, a copy of which is attached to the Motion for Preliminary Approval. A final motion and proposed order supporting the fairness of the proposed settlement will be submitted after members of the Settlement Class have received notice and have had an opportunity to object and exclude

---

[1] All capitalized terms used herein have the meanings set forth in this memorandum or in the Settlement Agreement. Also attached to the Settlement Agreement is a proposed Class Notice and proposed Order of Preliminary Approval.

themselves from the settlement, and prior to the Court's Final Approval Hearing. For the reasons set forth in detail below, the proposed settlement is reasonable, fair, and adequate, and it should be approved by the court.

## II.  THE SETTLED CLAIM & PLAINTIFFS' INVESTIGATION

This class action was filed by Mr. and Mrs. Reimer on May 19, 2020, based on their allegations that Bank of America violated the Equal Credit Opportunity Act ("ECOA") and the Virginia Equal Credit Opportunity Act ("VECOA") by sending unlawful adverse action notices that their credit cards were terminated.  The ECOA and VECOA require creditors to provide an adverse action notice that contains a "statement of reasons" for taking the action. The statement of reasons must include the principal and truthful reason for taking the adverse action. Plaintiffs alleged that the reason given by Defendant – that the accounts were being closed in accordance with the credit card agreement which allowed either party to terminate the account – was not the principal or true reason.  Because the adverse action notice was a form letter, Plaintiffs alleged that Bank of America sent the same letter to numerous other Virginia consumers to hide the true reason for terminating their credit cards.  The original complaint sought both statutory punitive damages as well as injunctive relief for the class.  Defendant moved to dismiss the original complaint based on several theories, including that the two-year statute of limitations under the VECOA had expired. Defendant's motion also argued that the Plaintiffs weren't entitled to an adverse action notice for termination of an existing account.  In response, Plaintiffs filed a First Amended Complaint ("FAC") dropping the VECOA claims and adding factual allegations. The FAC is the operative complaint in this case.  Defendant again moved to dismiss based on its legal theory that consumers aren't entitled to the ECOA adverse action notices for termination of existing accounts because they are not "applicants" covered by the statute. The Plaintiffs opposed the Motion to Dismiss and the matter was fully briefed by both sides.  At the time of the settlement, the Motion to Dismiss had not yet been decided.

3

Meanwhile, the court instructed the parties to proceed expeditiously with discovery despite the pendency of a dispositive motion. The court entered a bifurcated scheduling order for the merits portion of the case to proceed first. Both Parties served and responded to written discovery, including third party discovery, followed by a series of telephone conferences to discuss the discovery responses. Defendant produced sufficient responses in discovery for the Plaintiffs to understand both that the Rule 23 requirements could be met and that, in Plaintiffs' opinion, Defendant did not provide the principal reason for termination of the Plaintiffs' and class members' accounts. If the Plaintiffs survived dismissal, the Defendant, however, still had substantial defenses to the claims despite the fact that it admitted the accounts were terminated for reasons other than the terms of the credit card agreement.

The Parties also undertook informal settlement discussions early in the case and requested referral to a United States Magistrate Judge to further these discussions. The Parties established a depositions schedule to take fact witness, party and corporate testimony. Plaintiffs prepared for the depositions of Defendant's fact witnesses, which were to take place days after the settlement conference with Judge Miller. The Parties prepared for and appeared for an all-day settlement conference in front of Judge Miller. Both Mr. and Mrs. Reimer, as well as Defendant's representative, appeared for and participated in the settlement conference.

With Judge Miller's assistance, the Parties' negotiations at the settlement conference resulted in an agreement to basic terms of a settlement that provided significant monetary recovery of $1300 to be automatically distributed to a class of Virginians who received the same letter as the Plaintiffs. The Parties agreed that the monetary recovery for the class would not be reduced by settlement administration costs, litigation costs, or attorneys' fees, but rather paid separately by Defendant. Defendant also agreed that there would be no reversion and that the class funds would be distributed to the greatest extent possible before any request for *cy pres* distribution would be

made.  After class relief was agreed, the settlement conference was continued so that the Parties could negotiate other terms of the settlement, including the amount of attorneys' fees and service award to the class representatives.  Counsel continued to negotiate, again with the assistance of Judge Miller, and they agreed that Defendant would pay not more than $50,000.00 in attorneys' fees and litigation costs and $5,000.00 in service awards to each representative Plaintiff, as may be approved by the court.

### III.    THE PROPOSED SETTLEMENT OF THE CLASS CLAIM

**A.  Settlement Class**

Under the Settlement Agreement, the Parties agree to resolve the Class (the "Settlement Class") claims defined as follows:

> All natural persons residing within the Commonwealth of Virginia who received a notice substantially similar to those filed in the Class Action (at ECF Nos. 8-1, 8-2, and 8-3) from Bank of America within the five years preceding the filing of the Complaint.

Based on a review of its records, Bank of America has determined that the Settlement Class consists of 193 individual consumers. The settlement amount was specifically negotiated and agreed based on the representation of the number of class members.

**B.  The Consideration Provided to the Settlement Class Under the Settlement Agreement**

The proposed Settlement provides significant and meaningful relief to Defendant's Virginia customers whose credit accounts were terminated for reasons Plaintiffs contend were different than the reason provided in the adverse action notices. Class Members will receive $1300 each, without having to take any further action. Plaintiffs achieved the proposed settlement despite the real risk that the Defendant's Motion to Dismiss might be successful or that later, one of its other defenses would be successful, or that a class would not be certified. Nevertheless, Plaintiffs were able to negotiate a settlement structure that will provide meaningful and immediate benefits to affected Virginia consumers.

The ECOA provides for actual damages and statutory punitive damages in an amount up to $10,000.00. 15 U.S.C. § 1691e(a) & (b). In ECOA class actions, statutory damages may not exceed the lesser of $500,000.00 or one percent of the Defendant's net worth. Class members will automatically receive a substantial award of money without having to show the elements that

. . . the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

15 U.S.C. § 1691e(b). For Class Members who can show actual damages, they may opt-out of the settlement. For all other Class Members, they stand to recover substantial damages in light of the $500,000 limit on class action statutory damages under § 1691e(b).

### C. The Required Class Action Fairness Act Notice

Defendant will provide notice of the proposed settlement to be served under the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1715. The CAFA Notice will be sent to the Attorney General of the United States, to the Virginia Attorney General, and to the Attorneys General of any state in which a class member now resides, within ten days after the filing of the Settlement Agreement with the Court. To account for the deadlines under governing law, the Parties request that the Final Approval Hearing be scheduled no earlier than 90 days after the date of the mailing of the CAFA Notice.

### D. Attorneys' Fees and Expenses & Service Award

Class Counsel shall make an application to the Court for an award for attorneys' fees and costs, in an amount not to exceed $50,000.00. Although the Class will not be paying for attorneys' fees and costs out of their Settlement Fund, the amount of attorneys' fees represents approximately 20 percent of the value of the settlement to the Class. This agreed amount of attorneys' fees is within the range of class action attorneys' fees that has been approved by this and other courts.

Defendant has agreed to this amount, and has agreed not to oppose or object to the Plaintiffs' application for fees and costs.

Plaintiffs will also apply for a service award for their role as Class Representatives to acknowledge each Plaintiff for his/her effort in prosecuting this case including finding and retaining competent class counsel, assisting in discovery, participating in the settlement conference, and keeping abreast of the litigation. Defendant has agreed pay the service award separately and not to oppose the application for a $5000.00 service award to each of the class representatives.

### E. The Release of Claims

The release in the Settlement Agreement contains a narrow release only of the ECOA adverse action notice claims that were or could have been brought by the Class Members:

> "Released Claims" shall mean any and all claims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, including, without limitation, (i) those known or unknown or capable of being known, (ii) those which are unknown but might be discovered or discoverable based upon facts other than or different from those facts known or believed at this time, including facts in the possession of and concealed by any of the Released Persons, and (iii) those accrued, unaccrued, matured or not matured, all from the beginning of the world until the Final Approval Date for violation of the Adverse Action Notice provision of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691(d).

### F. Notice

Class Notice will be sent by first class U.S. mail to each Settlement Class Member identified on the Class List. Although email and other notice has been found to be perfectly adequate notice, mailed notice is considered to be the standard method of contacting class members regarding class settlements. *See also* Manual for Complex Litigation (Fourth) ("MCL"), § 21.311 (4th ed. 2004); *see also Henggeler v. Brumbaugh & Quandahl P.C., LLO*, 2013 U.S. Dist. LEXIS 155235, at *14–15 (D. Neb. Oct. 25, 2013) ("The court finds that the proposed notice is clearly designed to advise the class members of their rights. The Agreement provides for individual mailed

notices to each of the class members. Individual notice is the best notice practicable."). The list of Class Members and their last known addresses will be assembled and updated by the Defendant before providing it to the Settlement Administrator. Additionally, the Settlement Administrator will run the addresses through the National Change of Address database in an attempt to identify the best possible mailing address for each Class Member.

The Settlement Administrator will also establish and maintain a website on which pertinent information will be made available to Class Members, including the First Amended Complaint, the Settlement Agreement, the Class Notice, the Preliminary Approval Order, the proposed Final Judgment, and any court order setting a date and time for the Final Fairness Hearing. The website will also include important dates such as the deadline for mailing exclusion requests and objections, the date and time of the Final Fairness Hearing, the timeframe within which to expect checks, and the date on which checks must be cashed. There will be a "Frequently Asked Questions" (FAQ) section with common questions and explanations about the provisions and effects of the Settlement. There will be a phone number for Class Members to call with any questions that were not answered by the website.

## IV. ARGUMENT

### A. Elements of Certification for Settlement Class

There is a strong judicial policy within this Circuit favoring resolution of litigation prior to trial. *See, e.g., S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts.") (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)). Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources. As the court in *Stone* observed:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class

actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

749 F. Supp. at 1423 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)).

Rule 23 permits courts to preliminarily certify a class for purposes of effectuating a settlement of the case. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 793-94 (3d Cir. 1995) (collecting cases and authority). A court may grant preliminary approval of a class action where the class proposed for settlement satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), as well as one of the three subsections of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997), in this instance Rule 23(b)(3). If the Court determines a settlement class should be certified, the Court must then follow a three-step process prior to granting final approval of a proposed settlement. *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000); *see also In re Cathode Ray Tube (Crt) Antitrust Litig.*, No. 3:07-cv-5944 JST, 2016 WL 721680 *16 (N.D. Ca. Jan. 28, 2016); *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2017 WL 3499291 *3 (E.D. Mich. July 10, 2017).

First, the Court must preliminarily approve the proposed settlement. *Levell,* 191 F.R.D. at 547. Second, members of the class must be given notice of the proposed settlement. *Id.* Third, a final fairness hearing must be held, after which the Court must decide whether the proposed settlement is fair, adequate, and reasonable to the class as a whole, and consistent with the public interest. *Id.* This protects the class members' procedural due process rights and enables the Court to fulfill its role as the guardian for the class's interests. *Id.* Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.*

**B.    Consideration of the Rule 23(a) and Rule 23(b) Elements**

Rule 23 governs the certification of class actions. In considering a settlement at the preliminary approval stage, the first question for the court is whether a settlement class satisfies the requirements set forth in Rule 23, and thus may be conditionally certified for settlement purposes. Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and/or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a). Here, the Parties have reached a proposed agreement on behalf of the Settlement Class, which should be certified.

**1.    The Class Meets All Rule 23(a) Requirements.**

**a.    Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (citing *Kelley v. Norfolk & Western Ry. Co.*, 584 F.2d 34 (4th Cir. 1978)). Where the class numbers 25 or more, joinder is usually impracticable. *Cypress v. Newport News Gen'l & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (finding that 18 class members was sufficient to fulfill the numerosity requirement); *Souter v. Equifax Info. Servs., LLC.,* 307 F.R.D. 183 (E.D. Va. 2015)(citations omitted)(certifying a class of "at least" 1,000).

While it is not a very large class, the numerosity requirement is met here. As provided in the Settlement Agreement and according to Defendant's records, there are 193 members in the Settlement Class, including the named Plaintiffs. Joinder of this many individuals is not practical,

so the first prong of the certification test has been met. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003).

### b. Commonality

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003). The common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Jeffreys*, 212 F.R.D. at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory").

Critically, the common questions in this case can be resolved with reference to Defendant's standard conduct and documents, making them particularly susceptible of class treatment. Since the claims of all class members derive from the same form notice and procedures implemented by Defendant, there is certainly a common question of law or fact. Each of the Class Members is alleged to be subject to a practice whereby the Defendant, in violation of federal law 15 U.S.C. § 1691(d), failed to disclose the principal reason for terminating an existing credit arrangement with certain of its accountholders. 15 U.S.C. § 1691(d)(2); 12 C.F.R. § 1002.9. Plaintiffs allege that instead of disclosing a statement of actual reasons, Defendant informed each of the Class Members that the reason for the termination was that the credit card agreement allowed the account to be terminated at any time.  The practices at issue with respect to this claim are identical across Class

Members. The theories of liability as to all Class Members therefore arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class. *See* FED. R. CIV. P. 23(a).

### c. Typicality

In the typicality analysis, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 146 (4th Cir. 2001). "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power Co.,* 217 F.R.D. 201, 212 (E.D. Va. 2003). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys*, 212 F.R.D. at 322. Commonality and typicality tend to merge because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011).

Here, Plaintiffs' claims arise from the adverse action notices that Defendant sent to all the Class Members containing the same reason for termination: that it was based on the credit card agreement. Plaintiffs alleged that was not the true reason. Because the Plaintiffs and the Class Members all received the adverse action notices, they have identical claims. Plaintiffs advanced the ECOA violation on behalf of the Class Members for the five years prior to the filing of the Complaint, which includes the period in which Plaintiffs received the unlawful adverse action

notices. Thus, because the Plaintiffs' and Class Members' claims are identical and within the same time period, Plaintiffs have satisfactorily shown they are members of the Settlement Class. Consequently, in seeking to prove their claims, Plaintiffs will necessarily advance the claims of Class Members. This is the hallmark of typicality. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing Rule 23(a)(3)).

### d.  Adequacy of Representation

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys,* 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing *Broussard v. Meineke Disc. Muffler Shops,* 155 F.3d 331, 338 (4th Cir. 1998)).

The adequacy of representation requirement is met here, where the Plaintiffs' interests are in harmony with, rather than in conflict, with the interests of the class. *See, e.g.*, *Clark v. Trans Union, LLC*, No. 3:15CV391, 2017 WL 814252, at *13 (E.D. Va. Mar. 1, 2017).  Plaintiffs understand, have agreed, and have discharged the obligations of class representatives. They have refrained from pursuing an individual settlement, and have also had their names appear in the caption of the lawsuit, and publicly disclosed that their lines of credit had been terminated.

Plaintiffs also found and retained experienced counsel who has represented consumers in numerous consumer-protection class actions. Plaintiffs' counsel has been found to be adequate by this court. *See, e.g., Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14cv238, 2016 WL 1070819, at *3 (E.D. Va. Mar. 15, 2016); *Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 420 (E.D. Va. 2016) *Dreher v. Experian Info. Sols., Inc.*, No. 3:11-CV-00624-JAG, 2014 WL 2800766, at *2 (E.D. Va. June 19, 2014) *James v. Experian Info. Sols., Inc.*, No. 3:12CV902 (E.D. Va. Oct. 29, 2014);

*Soutter v. Equifax Info. Servs.*, *LLC*, 2011 U.S. Dist. LEXIS 34267, at *28 (E.D. Va. Mar. 30, 2011).

The Plaintiffs have been extremely involved in this litigation, including supplying the facts and evidence alleged in the Complaint, reviewing pleadings, cooperating in discovery, participating in the settlement conference, and independently informing themselves about consumer protection laws. Accordingly, the Class is adequately represented to meet Rule 23's requirements.

## 2. The Rule 23(b) Requirements are Satisfied.

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. The Class provides for the provision of monetary payments to its members and therefore must meet the requirements of Rule 23(b)(3): that questions of law or fact common to the members of the Class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974).

### a. *Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

Moreover, the Fourth Circuit has held that, even when present, individualized damage determinations may not preclude the conclusion that common questions of law and fact

predominate. *See, e.g.*, *Ward v. Dixie Nat. Life. Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010); *Gunnells*, 348 F.3d at 428. Instead, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986).

The predominance requirement is satisfied here because the essential factual and legal issues regarding the Class Members' claims are common, *e.g.*, (1) whether Defendant failed to supply Class Members with lawful adverse action notices; and (2) the appropriate amount of damages for the Defendant's violation of the ECOA. The Defendant provided the same adverse action notice to each and every Class Member. Although it is the reason that is provided in the notice, and not the notice itself, that Plaintiffs allege violated the ECOA, the Defendant's conduct with respect to each Class Member is uniform. Thus, the violation of the ECOA is uniform.

Because these issues are common, and indeed are determinative of the Rule 23(b)(3) Class Members' claims, they far outweigh the importance of any individual issues particular to Settlement Class Members.

This conclusion is in accord with the findings of courts examining predominance in the context of similar consumer claims, alleging that plaintiffs were the victims of common practices. *See, e.g.*, *Talbott* ("Here, common questions predominate because of the standardizednature of [defendant's] conduct . . . ") (Rule 23(b)(3) is normally satisfied where there is an essential common factual link, such as standardized documents and practices); *see also Amchem*, 521 U.S. at 625 (noting that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud… ."). Plaintiffs' and the putative class members' claims are identical violations of § 1691(d) and subject to the same proof. In proving the class claims, neither the

Plaintiffs nor any Class Member will need to prove anything individually. Class-wide claims predominate over any individual claims.

> b. *Superiority*

The superiority inquiry requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When determining whether a class action is superior, the Court should consider the following factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Jeffreys,* 212 F.R.D. at 323; *see also* Fed. R. Civ. P. 23(b)(3)(A)-(D).

"In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff. Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs." Advisory Committee's Note to 1996 Amendment to Rule 23. In other words, a class action is superior when potential damages may be too insignificant to provide class members with incentive to pursue a claim individually. Thus, the class mechanism permits a large group of claimants to have their claims adjudicated in a single lawsuit. The same is true here. Because the ECOA violation alleged in this case is based on the same adverse action notice, common issues predominate among the Settlement Class and it is the very type of case that is suitable for class resolution.

The ECOA provides that statutory punitive damages are available for violations of the adverse action notice provision specifically focused on the Defendant's conduct and does not depend on individual or actual damages. The individual damages of the Settlement Class Members directly traceable to the adverse action letter are likely difficult to quantify or may be small, thus providing little incentive for individual litigation. *See also Amchem*, 521 U.S. at 617 ("The policy

at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997)).

A class action in this case is superior to other available methods for the fair and efficient adjudication of the controversy because a class resolution of the issues described above outweighs the difficulties in management of separate and individual claims. The class action mechanism provides access to the courts for consumers who might not gain such access standing alone, particularly in light of the relatively small amount of actual and statutory damage claims that would be available to individuals. Moreover, such a certification permits Class Members to exclude themselves and pursue their own actions separately if they believe they can recover more in an individual suit.

Thus, both predominance and superiority are satisfied. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Bush*, 2012 WL 1016871, at *11 (quoting *Amchem*, 521 U.S. at 617). Rule 23(b)(3) was designed for situations such as this, where the amount in controversy for any individual claimant is small, but injury is substantial in the aggregate.

The class action procedure is the superior mechanism for dispute resolution in this matter. The alternative mechanism – individual lawsuits for a statutory penalty – would be costly, inefficient, and duplicative. Through the class action procedure, these common claims can be brought in one proceeding, thereby eliminating unnecessary duplication, preserving limited judicial resources, and achieving economies of time, effort, and expense.

### 3. The Settlement Is Fair, Reasonable, and Adequate and Should Be Preliminarily Approved.

After the analysis of the Rule 23(a) and (b) elements, the Court must then decide whether the proposed settlement is fair, reasonable, and adequate. Although pretrial settlement of class actions is favored, "Rule 23(e) provides that a class action shall not be dismissed without the approval of the court." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) (citations and internal quotations omitted). "To this end, 'the role of the Court reviewing the proposed settlement of a class action under Fed. R. Civ. P. 23(e) is to assure that the procedures followed meet the requirements of the Rule and . . . to examine the settlement for fairness and adequacy.'" *In re MicroStrategy*, 148 F. Supp. 2d at 663 (citations omitted).

After its 2018 amendment, Rule 23(e)(2) now provides that a proposed Settlement "would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether":

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These approval standards are, of course, well known to the court because they are identical to the long-standing Fourth Circuit analysis. *In re Jiffy Lube*, 927 F.2d 155. These safeguards ensure that "a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Amchem*, 521 U.S. at 621; *see also In re*

*Jiffy Lube*, 927 F.2d at 158 ("The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations."). In this case, each set of factors weighs in favor of approving the Settlement.

### 4. The Settlement Is Fair.

When evaluating the fairness of a settlement, the Court must evaluate the settlement against the following criteria: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *In re Jiffy Lube*, 927 F.2d at 159. The fairness inquiry ensures that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Id*. These factors point persuasively to the conclusion that the settlement here is fair.

The proposed settlement in this case was reached only after sufficient discovery, motions practice, and through arms-length informal and formal negotiation. As discussed above, the Plaintiffs conducted significant discovery into the Defendant's policies and procedures, as well as the factual question whether there was another, principal reason for termination of the accounts than the one proffered in the adverse action notice. The Parties both submitted substantive briefing on the Defendant's Motion to Dismiss, and thoroughly investigated the facts and claims at issue.

Counsel engaged in several telephone conferences to conduct good faith, arms-length negotiations prior to formal mediation involving the Plaintiffs and Defendant's representative supervised by Judge Miller. Because the settlement conference was actively facilitated by a magistrate judge, there is independent support for the conclusion that the posture of the action and the discovery conducted is such that the proposed settlement is fair, reasonable, and adequate. This action has been appropriately litigated by the Parties and sufficient discovery has been obtained by both Plaintiffs and Defendant to assess the strength of their respective claims and defenses. Courts have found that, where a settlement is the result of genuine arms-length negotiations, there is

a presumption that it is fair. *See, e.g.*, *City P'ship Co. v. Atlantic Acquisition Ltd. P'Ship*, 100 F.3d 1041, 1043 (1st Cir. 1996).

Pursuant to the Settlement, the Settlement Class Members will receive a substantial monetary recovery. Given the substantial relief obtained for Class Members, when contrasted against the risks associated with litigating this matter, the proposed settlement is fair and appropriate for approval. *See S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (concluding fairness met where "discovery was largely completed as to all issues and parties," settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience in the area of securities law). In this case, the litigation and negotiations were adversarial. Defendant is one of the largest financial institutions in the United States, and it is ably represented in this case by McGuireWoods, a large, international, and prestigious law firm with over 1,100 lawyers in twenty-one states and countries.

Finally, Plaintiffs' counsel is experienced in consumer class action litigation. She endorses the settlement as fair and adequate under the circumstances. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See, e.g.*, *In re MicroStrategy*, 148 F. Supp. 2d at 665.

It is also noteworthy that the Class Representatives support the settlement as fair and in the best interests of the Class. Plaintiffs are residents of the Commonwealth of Virginia and have placed themselves in the shoes of the Class Members they represent and have determined that the settlement is fair and request the Court's approval of the settlement.

### 5.    The Settlement Terms Are Adequate and Reasonable.

In assessing the adequacy of the Settlement, the Court should look to the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159. While it is too early to address the last factor, application of the other relevant factors confirms that the proposed settlement is adequate and should be preliminarily approved.

#### a.    The relative strength of the Plaintiffs' case and the difficulty in proving liability

The Plaintiffs have alleged that the reason in the adverse action notice cannot possibly be the true reason for the termination of their credit accounts, and they believe the evidence shows that Defendant actually terminated their accounts for other reasons.  However, the Plaintiffs' claims are not conclusively established.  Defendant has disputed Plaintiffs' claims since the inception of the case and raised numerous defenses to Plaintiffs' class claims. The motion to dismiss presents a risk to both sides, but especially to the Plaintiffs and *all consumers* if it were decided that existing account holders are not entitled to an adverse action notice at all. While Plaintiffs emphatically believe and have argued that the ECOA – as it has been enforced for 45 years to effectuate its anti-discrimination and education purpose – applies to them, Plaintiffs appreciate that there is a substantial risk that Defendant could prevail on its argument that the Plaintiffs were not applicants entitled to adverse action notices, and that multiple courts have endorsed that view. Given the Parties' positions, the potential risks and expenses associated with continued prosecution of the Lawsuit, the likelihood of appeals, the certainty of delay, and the

ultimate uncertainty of recovery through continued litigation, the proposed settlement is fair, adequate, and an excellent result for the Class.

### b.   The anticipated duration and expense of additional litigation

Aside from the potential that either side will lose at trial or on appeal, the Parties anticipate incurring substantial additional costs in pursuing this litigation further. The level of additional costs would significantly increase as the Parties continue to litigate. Thus, the likelihood of substantial future costs favors approving the proposed Settlement. Even more importantly, the long delay threatened by continued litigation, interlocutory appeal, and terminal appeal would delay Class Members' receipt of the benefits of this Settlement. Further, with the passage of time, the efficacy of direct notice of the settlement may be undermined by changes of address.

### c.   The solvency of the Defendant and the likelihood of recovery

There is no dispute that the Defendant is solvent and can pay the settlement amounts to the Class Members, attorneys' fees and costs, and class representative service awards.

### C.   The Proposed Notice and Notice Plan Satisfy Rule 23.

Following preliminary approval, the Class Members must be given notice concerning the terms of the settlement and of their rights. Rule 23(e)(1) requires that: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  In this instance, the proposed Settlement binds Class Members' rights to pursue class action claims and otherwise releases all claims for recovery that could have been brought in the litigation or under the ECOA. Rule 23(c)(2)(B) sets forth the contents of a notice to be sent to members of a Rule 23(b)(3) class:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests

exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. R. 23(c)(2)(B).

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)."

*Hanlon*, 150 F.3d at 1025.

> For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. R. 23(c)(2)(B). Plaintiffs have negotiated, and Defendant has agreed to and had input in drafting, a conventional Rule 23(b)(3) notice, which is direct notice to individual Class Members that provides information specific to each of the categories required in the Rule.

Individual notice is being provided directly to each Class Member by first class U.S. Mail. Under the 2018 amendment, the Rule expressly recognizes that the "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Because all of the Class Members are former Bank of America customers for whom Bank of America has a last known address, the Parties agree that mailed notice is still the most practicable under the circumstances.

In addition, the Settlement Administrator[2] will establish a website with relevant information concerning the case and the Agreement. Before sending the written notice, Defendant

---

[2] The Settlement Agreement provides that the Settlement Administrator will be selected by the Plaintiffs but must be agreed to by the Defendant. At the time of the filing of the Motion for

and the Settlement Administrator will confirm and, if necessary, update the mailing addresses for the Class Members through the standard methodology the administrator currently uses to update addresses so as to ensure the last known address for each Class Member is used. Such a notice plan easily satisfies Rule 23(c). *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 601 (N.D. Cal. 2015) (Approving combination notice "(i) by email to each Class Member, which shall include a hypertext link to the Settlement website; (ii) by Internet Posting, i.e., a Settlement website created to provide information about the Settlement, including the Full Notice; (iii) by Mail Notice for those Class Members whose email notices are returned as undeliverable; and (iv) by press release[.]"). See also *Tennille v. W. Union Co.*, 785 F.3d 422, 440 (10th Cir. 2015) *cert. denied sub nom. Dorsey v. Tennille*, 136 S. Ct. 835, 193 L. Ed. 2d 719 (2016) and *cert. denied sub nom. Nelson v. Tennille*, 136 S. Ct. 835, 193 L. Ed. 2d 719 (2016) (combined e-mail and mail notice satisfy Rule 23(c)); *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 351 (N.D. Ill. 2010) (same).

The Class Members will have the opportunity to object to the proposed settlement, which procedure is explained in the proposed Notice and which will be available on the website. Any Class Member who intends to object to the fairness of this settlement must file a written objection with the court after the Notice is mailed to the Class Members, and provide a copy to Class Counsel and counsel for Defendant. The Class Members will be notified that they may enter an appearance through an attorney at their own expense.

The proposed notice is appropriate and complies with both Rule 23(c)(2)(B) and (e)(1). The notice contains all  the required Rule 23 information and properly advises the Class Members of their rights. The proposed method for notifying the Class Members thus satisfies both Rule 23

---

Preliminary Approval, the Parties requested proposals from four prospective reputable administrators, but had not yet selected one. Plaintiffs will supplement the Motion with the identity of the class administrator prior to the hearing.

and due process and constitutes the best notice practicable under the circumstances.

The proposed Notice to the Settlement Class, which is attached as an Exhibit to the Settlement Agreement, satisfies all these requirements. The Settlement's robust notice and administration plan will ensure the maximum number of Class Members will receive notice of the settlement amount, the opportunity to exclude themselves and to object if they disagree with the settlement. Class Notice will be sent in accordance with Fed. R. Civ. P. 23(c) in the manner approved by the Court to each Settlement Class Member identified on the Class List provided from Defendant's records. *See* MCL, § 21.311; *see also Henggeler v. Brumbaugh & Quandahl P.C., LLO*, 2013 U.S. Dist. LEXIS 155235, at *14–15 (D. Neb. Oct. 25, 2013) ("The court finds that the proposed notice is clearly designed to advise the class members of their rights. The Agreement provides for individual mailed notices to each of the class members. Individual notice is the best notice practicable.").

For these reasons, the proposed Notices and notice plan represent the "best notice that is practicable under the circumstances," and it therefore meets the notice requirements of Rule 23. Consequently, the Notices and notice plan should be approved by the Court.

## V. CONCLUSION

The Settlement is an excellent result considering the posture of the case and the risks to each Party in continuing the litigation. The terms of the Settlement, as well as the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case through trial and appeal, satisfy the prerequisites for preliminary approval. Therefore, for the reasons discussed above, the court should:  (1) certify the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3) for settlement purposes only, appoint the Named Plaintiffs as the class representatives of the Settlement Class for settlement purposes only, and appoint Class Counsel as counsel for the Settlement Class for settlement purposes only; (2) preliminarily approve the Settlement Agreement as fair, adequate, and reasonable, and within the reasonable range of possible Final Approval;

(3) approve the form of Class Notice and find that the notice plan satisfies due process and Rule 23 of the Federal Rules of Civil Procedure; (4) direct that Notice be sent to the Class; (5) set the date and time for the Final Fairness Hearing, which may be continued by the Court from time to time without the necessity of further notice; and, (6) set the Objection Deadline.

Respectfully submitted,

**RUHI REIMER AND NOOSHIN REIMER**

By: _____/s/_____
Susan Mary Rotkis, VSB 40693
Price Law Group, APC
382 S. Convent Ave.
Tucson, AZ 85701
T: (818) 600-5533
F: (818) 600-5433
E: susan@pricelawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2020, I filed the foregoing with the Clerk of Court, using CM/ECF which will serve attorneys of record by sending a notice of electronic filing (NEF) to the following :

Brian E. Pumphrey (VSB No. 47312)
Heidi E. Siegmund (VSB No. 89569)
Keith J. Minson (VSB No. 89417)
Tanya L. Greene
MCGUIREWOODS LLP
Gateway Plaza
800 E Canal Street
Richmond, VA 23219
Telephone: (804) 775-1000
Fax: (804) 698-2315
bpumphrey@mcguirewoods.com
hsiegmund@mcguirewoods.com
kminson@mcguirewoods.com
TGreene@mcguirewoods.com

*Counsel for Defendant*
*Bank of America, N.A.*


_____/s/_____
Susan Mary Rotkis, VSB 40693
Price Law Group, APC
382 S. Convent Ave.
Tucson, AZ 85701
T: (818) 600-5533
F: (818) 600-5433
E: susan@pricelawgroup.com